UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| PIKE COUNTY FISCAL COURT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 7:20-CV-75-REW |
| v. | ) | |
| | ) | |
| RCC BIG SHOAL, LLC, et al., | ) | OPINION & ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In August of 2014, the Pike County Fiscal Court agreed to purchase a $400,000 promissory note carrying a 25% annual interest rate from RCC Big Shoal, LLC (Big Shoal). After the note matured in August of 2017, Big Shoal eventually made $50,000 payments in May and June of 2018, but no more. Plaintiffs[1] then sued Big Shoal in Pike Circuit Court for the balance due and accrued interest. On January 30, 2020, the state court granted judgment in Plaintiffs' favor on the initial pleading and, on March 27, granted Plaintiffs leave to file an amended complaint. The now-operative pleading added Big Shoal's sole members, William Johnson and David Farmer, as party Defendants and asserted new theories—corporate veil piercing, fraud, and unjust enrichment. Shortly after they were served, Johnson and Farmer removed this matter to federal court.

The gist of Plaintiffs' theory is that Johnson and Farmer paid themselves "exorbitant" salaries and benefits without any intention of completing (or advancing) the project for which the Pike Fiscal Court invested the source funds, knowing all the while that they would be leaving the

---

[1] The Fiscal Court and Pike County Industrial Development and Economic Authority. DE 1-3 at 5.

1

company without the resources to pay the bill when it came due. *See* DE 1-3 (Am. Compl.). Johnson and Farmer now target each of Plaintiffs' claims with a motion to dismiss. DE 5 (Motion); DE 4 (Mem. in Support). For the following reasons and under the applicable standards, the Court grants in part and denies in part Defendants' motion. The Court dismisses Count III but permits Counts I, II, and IV to proceed.

I.     **GOVERNING STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do[.]" *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys*, 684 F.3d at 608. Yet, courts need not accept "legal conclusion[s] couched as [ ] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986). The Court evaluates and tests the well-pleaded Complaint contents. *Peterson v. Ostrander*, No. 17-2160, 2018 WL 4739692, at *2 (6th Cir. Apr. 6, 2018) ("[T]he court must confine its analysis to the pleadings and accept all well-pleaded allegations as true.").

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[ ] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

## II. ANALYSIS

### A. Counts I & II

Defendants argue that "Count I of the Amended Complaint was decided in its entirety by the Pike Circuit Court[.]" DE 4 at 1.[2] The record supports that idea to the extent that Plaintiffs sought to hold Big Shoal, alone, liable for the promissory note breach. *See* DE 1-2 (Op., Order & J.). However, the operative pleading's Count II allegations add a critical wrinkle. DE 1-3 ¶¶ 14–22. In that Count, Plaintiffs allege that Big Shoal's members, Defendants Johnson and Farmer:

— Used Big Shoal "as a mere instrumentality for their own personal gain." *Id.* ¶ 15.
— Exercised control over Big Shoal "in such a way as to defraud and/or harm the Plaintiffs." *Id.* ¶ 16;
— Undercapitalized Big Shoal. *Id.* ¶ 17;
— Failed "to observe the formalities of corporate existence[.]" *Id.* ¶ 18;
— "[D]id not properly pay dividends." *Id.* ¶ 19;

---

[2] Johnson and Farmer include a passing reference to "res judicata." DE 4 at 2. Defendants cite no case law and include no substantive argumentation on this topic. An unadorned aversion to the doctrine is, in the Court's view, insufficient to trigger a full preclusion analysis. However, the Court notes that the same Pike Circuit Judge that entered judgment against Big Shoal also permitted—evidently after a hearing, *see* DE 1-3 at 4—Plaintiffs to file the current operative pleading. *Id.* at 3. It seems unlikely to this Court that the Pike Circuit would have authorized the amended complaint if it viewed its earlier judgment as precluding the revised claims. Though not binding on this federal court's assessment under the federal rules, the tacit view of the issuing state court concerning the judgment's reach would be instructive for any preclusion analysis. *See Middleton v. PNC Bank, NA*, 785 F. App'x 341, 343 (6th Cir. 2019) ("State law determines the preclusive effect of a prior state-court action.").

— "[S]iphoned off funds from [Big Shoal] for their own use and benefit, rather tha[n] using said funds for the" purposes stated in their "business dealings with the Plaintiffs." *Id.* ¶ 20; and

— Used Big Shoal's corporate form "to knowingly defraud the Plaintiffs." *Id.* ¶ 21.

On these grounds, Plaintiffs seek to pierce Big Shoal's corporate veil and hold Johnson and Farmer personally liable. *Id.* ¶ 22. As Defendants accurately argue, Kentucky recognizes veil piercing not as "a cause of action unto itself" but as "an equitable remedy, . . . which is used as a means of imposing liability." *Hodak v. Madison Capital Mgmt., LLC*, 348 F. App'x 83, 94 (6th Cir. 2009) (quotation marks omitted).[3] Put differently, "corporate veil piercing 'governs the *vicarious liability* of a shareholder for the debts of a corporation.'" *In re Howland*, 674 F. App'x 482, 486 (6th Cir. 2017) (emphasis in original) (quoting *Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky. 1989)). And, under the doctrine, "the debt of the pierced entity becomes enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence." *Inter-Tel Techs., Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012).[4] Consequently, if Plaintiffs can justify piercing Big Shoal's corporate form, the state court's resolution of the Count I issues as to the entity would not foreclose liability (at least not as a matter of law) for Johnson and Farmer on that claim.

---

[3] Because Kentucky does not recognize a distinct veil-piercing cause of action, Defendants' statute of limitations argument is misplaced. DE 4 at 4. The Kentucky statute applicable to the cause of action for which Plaintiffs seek to hold Defendants individually liable supplies the relevant limitations period. Here, Plaintiffs claim a promissory note due and payable "by no later than the Maturity Date of August, 2017[.]" DE 1-3 ¶ 9. Kentucky provides a 5-year limitations period for "[a]n action . . . upon a promissory note[.]" KRS 413.120(7). From the complaint, it appears Plaintiffs had no default to base a suit on until, at the earliest, the August 2017 maturation date. On this record, Count I is facially timely. Given the Sixth Circuit's general reluctance "to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted[,]" the Court rejects Defendants' cursory timeliness challenge. *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013).

[4] The Court recognizes that Big Shoal is an LLC, not a "corporation." However, the cases on Kentucky veil piercing make no issue of this distinction—neither do the parties. *See id.*; *Hodak*, 438 F. App'x at 94–95. The Court follows suit.

Despite Plaintiffs' somewhat inartful pleading, giving the complaint the appropriate benefit of the doubt, the Court fairly infers that the Count II allegations are intended not as a separate cause of action, but as a theory for establishing liability against Farmer and Johnson on the Count I debt. Kentucky permits veil piercing, in appropriate circumstances, for precisely that purpose. *Inter-Tel*, 360 S.W.3d at 155 ("Piercing the corporate veil is an equitable doctrine invoked by courts to allow a creditor recourse against the shareholders of a corporation."). Thus, the Court sees no basis for dismissing Count II based on the absence of Commonwealth recognition of veil piercing as a distinct cause of action. As Justice Frankfurter once said: "Litigation is the pursuit of practical ends, not a game of chess." *City of Indianapolis v. Chase Nat. Bank of City of New York*, 62 S. Ct. 15, 17 (1941). Ultimately, the viability of Counts I and II (as pleaded against Johnson and Farmer) hinges on whether Plaintiffs have plausibly alleged grounds for veil piercing under Kentucky law.

*Kentucky Veil Piercing*

In 2012, the Commonwealth overhauled its veil-piercing doctrine. *See Inter-Tel*, 360 S.W.3d at 163–65. The current formulation boils down to "two dispositive elements: (1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Id.* at 165 (emphasis in original). To assess separateness, courts consider a "laundry list" of factors:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.

*Id.* at 163–64.

5

For the second prong, *Inter-Tel* erects two guideposts. First, "evidence of actual fraud" is not required. *Id.* at 164–65. Second, "the injustice must be some wrong beyond the creditor's mere inability to collect from the corporate debtor." *Id.* Kentucky's high court also approved a list of examples as "illustrative of schemes and circumstances that, while not constituting fraud, merit piercing where there is also evidence" satisfying the first element:

> [W]here a party would be unjustly enriched; where a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful.

*Id.* (alterations and quotation marks omitted). Ultimately, before concluding that the second element is satisfied, a "trial court should state specifically the fraud or injustice that would be sanctioned if the court declined to pierce the corporate veil." Assessing these elements through Rule 12's plaintiff-favorable and permissive lens, the Court finds that the pleading sets forth adequate facts to plausibly satisfy both prongs of the *Inter-Tel* test.

### *Corporate Separateness*

The pleaded factual allegations support—directly or as the platform for a fair, plausible inference—seven of the eleven factors Kentucky has recognized as favoring a consequential lack of separateness. Plaintiffs squarely assert "inadequate capitalization" (*see* DE 1-3 ¶ 17); "failure to observe corporate formalities" (*see id.* ¶ 18); "nonpayment of dividends" (*see id.* ¶ 19); "diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors" (*see id.* ¶¶ 20, 24, 28); and that Big Shoal was, in fact, "a mere facade for the operation of the" sole members (*see id.* ¶¶ 15–16, 20–21, 25, 28). *Inter-Tel*, 360 S.W.3d at 163–64. Plaintiffs' allegations concerning Farmer & Johnson's purportedly "exorbitant pay and benefits[,]" lack of intent to repay the note, undercapitalization, as well as Big Shoal's default on

6

the promissory note—DE 1-3 ¶¶ 9–11, 17, 24–25[5]—make out a plausible inferential case of "insolvency of the debtor" company. *Inter-Tel*, 360 S.W.3d at 163–64. Plaintiffs assert that Farmer & Johnson siphoned LLC funds for personal gain; undercapitalized Big Shoal; knowingly or negligently misrepresented their intentions in negotiations on behalf of the entity; and disregarded the formalities attendant to a distinct corporate existence. Such conduct is hardly the behavior of validly functioning LLC "officers or" members. *Inter-Tel*, 360 S.W.3d at 163–64. It remains to be seen whether discovery will bear out Plaintiffs' contentions. However, at this stage, the Court finds the pleaded facts sufficient, under the applicable standards, for *Inter-Tel*'s first veil-piercing element.

*Injustice Sanctioned*

The complaint allegations also state a facially plausible claim that injustice would be sanctioned if Big Shoal's veil were not pierced. Specifically, read in the light most favorable to Plaintiffs and accepting the asserted facts as true, the pleading permits a reasonable inference that if the veil were not pierced, Defendants Farmer and Johnson would either (A) succeed with "an intentional scheme to squirrel assets into [their own pockets] while heaping liabilities upon [a nearly] asset-free" LLC; or (B), as the Court explains in its discussion of Count 4, be unjustly enriched. *Inter-Tel*, 360 S.W.3d at 164–65.

Again, Plaintiffs allege that Johnson and Farmer negotiated and executed the sale of a $400,000 promissory note[6] to the Pike County Fiscal Court. The Note Purchase Agreement expressly provides:

---

[5] And, the procedural reality that Plaintiffs moved to add the individual Defendants *after* securing a judgment against Big Shoal.
[6] Though Defendants failed to file the Note Purchase Agreement (despite its evident attachment to and express incorporation by reference in the pleading) with the notice of removal, the document

7

> The proceeds from the sale of the Note . . . shall be used by [Big Shoal] for expenses including engineering, permitting, legal, and other working capital costs purposes for a project to produce synthetic fuel products to be located in Pike County, Kentucky.

DE 7-7 ¶ 1.5. Plaintiffs assert that the individual Defendants brokered this deal through their LLC with no intention of ever repaying the note and with knowledge that the envisioned "project would never come to fruition." DE 1-3 ¶ 25. Indeed, per Plaintiffs, Farmer and Johnson borrowed on behalf of an undercapitalized Big Shoal and, instead of using the note-sale yield for the contractual purposes, proceeded to siphon funds for their own allegedly inflated salaries. Discovery may tell a different tale. However, at this stage, the Court accepts the pleaded narrative. Accruing a $400,000 liability in the name of an underfunded LLC with no designs on using the funds for the anticipated purpose, pocketing the proceeds, and then asserting the shield of the corporate form to avoid a true reckoning is a scenario that easily qualifies as an "injustice" for which *Inter-Tel* authorizes potential veil-piercing.

### B. Count III

*Timeliness*

Defendants contend that "the only reasonable interpretation of the Amended Complaint would be that the" fraud alleged "occurred, if at all, prior to 2014, more tha[n] five years" before Plaintiffs initiated this suit. DE 4 at 5. Thus, Movants argue, the fraud claim is time barred. The defense is correct about two things: First, the statute of limitations for a Kentucky fraud claim is five years. KRS 413.120(11). Second, Count III clearly alleges that Defendants fraudulently induced Plaintiffs to consummate the August 2014 transaction. Thus, the at-issue misrepresentations could have occurred no later than the date of the parties' agreement. However,

---

is in the record. *See* DE 7-7. The Court may properly reference the agreement at the Rule 12 stage. *Ashland*, 648 F.3d at 467.

those predicates do not irresistibly terminate in Defendants' conclusion—an untimely Count III. The defense's logical chain is missing a critical link: accrual. Per KRS 413.130, a fraud claim does not accrue "until the discovery of the fraud or mistake."[7] *See Bowden v. City of Franklin, Kentucky*, 13 F. App'x 266, 274 (6th Cir. 2001) ("[T]he Court must look to state law to determine when the claim for relief accrues when that claim is before a federal court on diversity or supplemental jurisdiction."). Nothing in the pleading hints at discovery of any alleged misrepresentations more than five years before Plaintiffs filed suit. Thus, Defendants' timeliness argument earns no relief at the Rule 12 stage.

*Pleading Sufficiency under Rule 9(b)*

A Kentucky fraud claim has six elements:

> a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). Per Civil Rule 9(b), "a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "The Sixth Circuit interprets" Rule 9(b)'s heightened pleading requirement "as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quotation marks omitted). The Court sees no particularized allegations concerning time, place, or content of the alleged misrepresentations. Even if the Court stretched to infer that Plaintiffs alleged that Johnson and/or

---

[7] Kentucky's ten-year statute of repose for such claims is obviously without impact here. *See* KRS 413.130(3).

Farmer[8] represented, specifically, that they intended to repay the promissory note or planned to actually complete the project, the absence of assertions anchoring the purported misrepresentations to a discrete time and place would still doom the claim as pleaded.[9] *United States ex rel. Roycroft v. Geo Grp., Inc.*, 722 F. App'x 404, 406 (6th Cir. 2018) ("Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting fraud—i.e., the who, what, when, where, and how of the alleged fraud."); *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011) ("Nowhere in its complaint does it say

---

[8] Given the elevated standard, Plaintiffs' failure to attribute the claimed statements to any specific Defendant (with actual detail) is, itself, problematic. *See Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011) (calling "pleadings' generic references to the misconduct of 'all Defendants'" insufficient under the Rule 8 standard); *Jackson v. Mix*, 282 F. App'x 361, 362 (6th Cir. 2008) (affirming dismissal of complaint that failed to link "factual allegations" to "any specific defendant"); *DeNoma v. Kasich*, No. 16-3839, 2017 WL 6987677, at *3 (6th Cir. Oct. 16, 2017) ("[D]ismissal of these claims was proper because each count failed to identify specific actions taken by specific defendants."); *see also U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 506 (6th Cir. 2007) (holding that a relator's failure to identify "the specific individual employees within the defendant corporation who submitted false claims" is "relevant to the inquiry of whether a relator has pled the circumstances constituting fraud with particularity," but that such information "is not mandatory" because "[t]he offending corporation can . . . be the perpetrator of a" False Claims Act violation). Plaintiffs develop no fraud by omission construct.

[9] It is worth noting that Plaintiffs' response brief offers no more particularized factual assertions. *See* DE 13 at 5–6. Instead, Plaintiffs argue that Johnson and Farmer "have made every attempt to preclude the Plaintiffs from conducting discovery to properly identify these facts." *Id.* at 5. Given the purpose of Rule 12 motions, this contention is inapt. Plaintiffs were the recipients of the alleged misrepresentations. It is hardly too much to ask that they identify the author or speaker, the location, and the time of the purported misstatements before opening the door to discovery.

10

when and where the [defendant] made an intentional misrepresentation about its purported authority to negotiate on behalf of the retirees."). Thus, the Court will dismiss Count III.[10]

C. Count IV

A Kentucky unjust enrichment claim has three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017) (citations omitted). Defendants challenge Count IV on two bases. Neither argument is persuasive.

First, Defendants rely on the general principle that "[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. App. 1977). As the Kentucky Supreme Court recently explained, this concept derives from "the controlling legal principle [ ] that where a party has an 'adequate legal remedy available' it bars unjust enrichment." *Superior Steel*, 540

---

[10] One Sixth Circuit panel concluded, on the facts then-presented, that when a "complaint failed to meet the pleading requirements of Rule 9(b)[,]" the trial court should "have dismissed the claim, but without prejudice and with leave to amend, because dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Newberry v. Silverman*, 789 F.3d 636, 645–46 (6th Cir. 2015) (internal alteration and quotation marks omitted). However, subsequent Circuit decisions have narrowly interpreted *Newberry*. *See, e.g.*, *Geo Group*, 722 F. App'x at 409. And, prior published Circuit decisions unequivocally concluded that when, as here, "a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice." *CNH Am. LLC*, 645 F.3d at 795; *see also Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 n.7 (6th Cir. 2017) (noting that the "problem with the lack of a motion or proposed amendment. . . is that" it is "impossible for the district court to determine whether leave to amend should have been granted."). Here, unlike *Newberry*, the Court has no "ten-page affidavit in support of [plaintiff's] opposition" that contains "significantly greater detail demonstrating a reasonable probability that the complaint, if amended, could withstand scrutiny under Rule 9(b)." *See Geo Group*, 722 F. App'x at 409 (quotation marks omitted) (describing *Newberry*). In the circumstances, the Court has no obligation to "engage in a guessing game as to what [Plaintiffs] might plead to save [their] claim." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 552 (6th Cir. 2008).

11

S.W.3d at 778. However, *Superior Steel* went on to explain that the principle is inapplicable to a scenario "where a party is uncompensated under a contract with a third party for a performance that ultimately benefits the defendant." *Id.* at 779; *see also id.* ("Restitution claims of great practical significance arise in a contractual context, but they occur at the margins, when a valuable performance has been rendered under a contract that is . . . ineffective to regulate the parties' obligations." (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c (2011)). In such circumstances, the complaining party has no adequate contractual remedy. *See id.* at 778 ("As [defendants] acknowledge, their desired outcome is premised on [plaintiffs] having an adequate remedy elsewhere, and in fact they have no such remedy."). The instant circumstances are sufficiently analogous—Johnson and Farmer did not *directly* contract with any Plaintiff and the availability of an adequate legal remedy is still an open question—to warrant bypassing the general contractual bar, at least at this stage.[11]

Defendants' Rule 8 attack fares no better. Plaintiffs have plausibly alleged that they paid hundreds of thousands of dollars to Big Shoal, and that Johnson and Farmer benefitted thereby. The defense does not dispute that benefits were conferred and appreciated. *See* DE 4 at 6. Rather, Defendants summarily conclude that the alleged benefits "do not sound like inequities." *Id.* This facile argument, unburdened by analysis or citation to authority, hardly warrants complaint dismissal. Defendants challenge the nature of the conferred benefits but ignore the key inquiry under Kentucky law—*i.e.*, whether <u>retention</u> of the subject benefits would be inequitable. Plaintiffs do not allege that salary, service fees, and expenses are categorically inequitable benefits. Rather,

---

[11] The possibility that Plaintiffs might successfully pierce Big Shoal's corporate veil and that the contract may ultimately provide an adequate legal remedy does not justify dismissal. The unjust enrichment claim is one pleaded in the alternative, "and alternative pleading is permissible under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2) and 8(d)(3)." *Bacon v. Subway Sandwiches & Salads, LLC*, 2015 WL 729632, at *4 (E.D. Tenn. 2015).

consistent with *Superior Steel*, they claim that permitting Johnson and Farmer to keep those benefits would, under the circumstances alleged, be inequitable. The Court has already detailed numerous plausibly averred indicia of inequity and sees no need to rehash that discussion to reject Defendants' undeveloped Count IV challenge. Again, the Court, at this stage, accepts Plaintiffs' factual claims. Suffice it to say that Plaintiffs have plausibly depicted circumstances in which it would be inequitable to allow Johnson and Farmer to retain what they took from the county's outlays. And, given open questions regarding the individual Defendants' contractual liability, dismissal of the equitable claim now would be premature. Count IV clears the 12(b)(6) hurdle.

### III. CONCLUSION

For all these reasons, the Court **ORDERS** as follows:

1. The Court, to the extent and on the terms stated, **GRANTS** DE 5 **IN PART**;
2. The Court **DISMISSES** Count III; and
3. The Court otherwise **DENIES** the motion.

This the 24th day of November, 2020.

Signed By:
*Robert E. Wier*
United States District Judge